ACCEPTED
06-14-00099-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
5/7/2015 5:03:28 PM
DEBBIE AUTREY
CLERK

No. 06-14-00099-CV
_____

## IN THE COURT OF APPEALS
## FOR THE SIXTH DISTRICT OF TEXAS AT TEXARKANA

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
5/8/2015 8:32:00 AM
DEBBIE AUTREY
Clerk

_____

### RICHARD PARKER

**Appellant**

**v.**

### JOANN PARKER NEAL

**Appellee**

_____

## On Appeal from the 276th District Court of Camp County
## Robert Rolston, Judge Presiding

_____

### APPELLEE'S BRIEF

_____

**Chad M. Ruback**
**State Bar No. 90001244**
**chad@appeal.pro**
**The Ruback Law Firm**
**8117 Preston Road**
**Suite 300**
**Dallas, Texas 75225**
**(214) 522-4243**
**(214) 522-2191 fax**

**ORAL ARGUMENT REQUESTED ONLY IF GRANTED TO APPELLANT**

# IDENTITY OF PARTIES AND COUNSEL

**Appellant**

Richard Parker

**Appellant's Trial and Appellate Counsel**

Tom S. McCorkle
408 W. Tyler Street
Gilmer, Texas 75644

**Appellee**

JoAnn Parker Neal

**Appellee's Trial Counsel**

Lance W. Hinson
311 E. 16th Street
Mount Pleasant, Texas 75455

**Appellee's Appellate Counsel**

Chad M. Ruback
8117 Preston Road
Suite 300
Dallas, Texas 75225

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.      In response to Richard's first issue on appeal, there was ample evidence to support the jury's finding that Nobie lacked testamentary capacity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    II.    In response to Richard's second issue on appeal, there was ample evidence to support the jury's finding that Nobie signed the will under undue influence.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# INDEX OF AUTHORITIES

*ACS Investors, Inc. v. McLaughlin*,
 943 S.W.2d 426 (Tex. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Alldridge v. Spell*,
 774 S.W.2d 707 (Tex. App.—Texarkana 1989, no writ). . . . . . . . . . . . . . . 5

*Bracewell v. Bracewell*,
 20 S.W.3d 14 (Tex. App.—Houston [14th Dist.] 2000, no pet.). . . . . . . . . 10

*Campbell v. Groves*,
 774 S.W.2d 717 (Tex. App.—Dallas 1989, writ denied). . . . . . . . . . . . . . . 6

*Cobb v. Justice*,
 954 S.W.2d 162 (Tex. App.—Waco 1997, pet. denied). . . . . . . . . . . . . . . 14

*Croucher v. Croucher*,
 660 S.W.2d 55 (Tex. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*,
 960 S.W.2d 41 (Tex. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Estate of Butts*,
 102 S.W.3d 801 (Tex. App.—Beaumont 2003, pet. denied). . . . . . . . . . . . 4

*In re Estate of Riley*,
 824 S.W.2d 305 (Tex. App.—Corpus Christi 1992, writ denied). . . . . . . . 12

*In re Estate of Woods*,
 542 S.W.2d 845 (Tex. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Rothermel v. Duncan*,
 369 S.W.2d 917 (Tex. 1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

*Seigler v. Seigler*,
 391 S.W.2d 403 (Tex. 1965). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Sterner v. Marathon Oil Co.*,
      767 S.W.2d 686 (Tex. 1989)... . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6, 9

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Richard Parker raises two issues on appeal, both alleging (1) insufficient evidence to support the jury's finding or (2) that the contrary to the jury's finding was established as a matter of law. The law is well-settled as to such issues.

Moreover, the record in this case is also straightforward. This was a one-day trial with only three witnesses. The issues in this appeal do not involve any documentary evidence.

Because the law and the facts at issue are both straightforward, oral argument is unlikely to be helpful to the Court in disposing of this appeal.

**STATEMENT OF THE CASE**

Appellant Richard Parker applied to probate a will of Nobie Parker. [CR 5; Appellant's Brief at p. 3] Nobie's daughter Appellee JoAnn Parker Neal contested Richard's application. [CR 9; Appellant's Brief at p. 3] JoAnn alleged that, at the time Nobie signed the will at issue, Nobie (1) lacked testamentary capacity and (2) was unduly influenced to sign the will. [CR 10] The case was tried to a jury. [CR 37; Appellant's Brief at p. 1]

The jury unanimously found that, at the time Nobie signed the will at issue, she (1) lacked testamentary capacity and (2) was unduly influenced to sign the will. [CR 26, 28; Appellant's Brief at p. 1] Consistent with the jury's verdict, the trial court signed a judgment (1) holding that the will is invalid and (2) denying Richard's application to probate the will. [CR 37-38]

## STATEMENT OF FACTS

Nobie Parker was born in 1918 and died in 2011 at the age of 92. [CR 5; RR vol. 2 pp. 64, 132; Appellant's Brief at p. 3] She had three children, Mike, Appellant Richard, and Appellee JoAnn. [RR vol. 2 pp. 8-10, 19, 102-103] Mike died in 2005. [RR vol. 2 p. 24]

Nobie signed a will in August of 2003 which provided that her estate was to be divided equally among her three children. [RR vol. 2 pp. 30, 34-35; RR vol. 6 Exhibit O-1] The 2003 will provided that, if Mike should predecease Nobie, then Mike's share would go to Deborah Kay Harris. [RR vol. 2 p. 35; RR vol. 6 Exhibit O-1] Deborah is Nobie's granddaughter. [RR vol. 2 pp. 9, 104-105][1]

---

[1] The record contains four wills which Nobie had signed prior to the August 2003 will. The first of those four wills provided that Nobie's estate would go to her husband and, if he were to predecease her, then her estate was to be divided equally among her three children. [RR vol. 2 pp. 127-128; RR vol. 6 Exhibit O-2] The subsequent three wills all provided that Nobie's estate was to be divided equally among her three children and, if Mike should predecease Nobie, then Mike's share would go to Deborah Kay Harris. [RR vol. 2 pp. 128-132; RR vol. 6 Exhibits O-3, O-4, O-5]

Nobie signed another will—the will at issue in this case—in February of 2006. [CR 5; RR vol. 6 Exhibit P-1]  The 2006 will provided that all of Nobie's estate was to be given to Richard, with nothing to JoAnn or Deborah.  [RR vol. 6 Exhibit P-1][2]

Richard applied to probate the 2006 will.  [CR 5; Appellant's Brief at p. 3] JoAnn contested Richard's application.  [CR 9; Appellant's Brief at p. 3]  JoAnn alleged that, at the time Nobie signed the 2006 will, Nobie (1) lacked testamentary capacity and (2) was unduly influenced to sign the will.  [CR 10]  The case was tried to a jury.  [CR 37; Appellant's Brief at p. 1]

The jury unanimously found that, at the time Nobie signed the will at issue, she (1) lacked testamentary capacity and (2) was unduly influenced to sign the will.  [CR 26, 28; Appellant's Brief at p. 1]  Consistent with the jury's verdict, the trial court signed a judgment (1) holding that the will is invalid and (2) denying Richard's application to probate the will.  [CR 37-38]

---

[2]  The record reflects that Nobie had always been close to both JoAnn and Deborah. [RR vol. 2 pp. 67-68, 104-121, 136-137] The record contains no indication that Nobie ever had a falling out with either JoAnn or Deborah.

2

## SUMMARY OF THE ARGUMENT

In response to Richard's first issue on appeal, there was ample evidence to support the jury's finding that Nobie lacked testamentary capacity. The jury's finding that Nobie lacked testamentary capacity would be sufficient to support the trial court's judgment denying probate to the will at issue—even without the jury's finding of undue influence. Consequently, if this Court overrules Richard's first issue on appeal, it would be appropriate to affirm the trial court's judgment without ever reaching Richard's second issue on appeal.

In response to Richard's second issue on appeal, there was ample evidence to support the jury's finding that Nobie signed the will under undue influence.

## ARGUMENT

Richard raises two issues on appeal. In Richard's first issue on appeal, he claims that the evidence established as a matter of law that Nobie had testamentary capacity at the time she signed the will and that there was no evidence to support the jury's finding to the contrary. [Appellant's Brief at p. 2] In Richard's second issue on appeal, he claims that the evidence was legally insufficient to support the jury's finding that Nobie signed the will under undue influence. [Appellant's Brief at p. 2]

Because either of these two jury findings would independently be sufficient to support the trial court's judgment denying probate to the will at issue, the trial court's judgment should be affirmed even if this Court were to find one of Richard's two appellate issues meritorious. *See Bracewell v. Bracewell*, 20 S.W.3d 14, 19 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ("to form a valid will, in Texas, the testatrix must have had 'testamentary capacity' when the will was executed"); *In re Estate of Butts*, 102 S.W.3d 801, 803 (Tex. App.—Beaumont 2003, pet. denied) (undue influence serves to "invalidate a will").

**I. In response to Richard's first issue on appeal, there was ample evidence to support the jury's finding that Nobie lacked testamentary capacity.**

In Richard's first issue on appeal, he claims that the evidence established as a matter of law that Nobie had testamentary capacity at the time she signed the will and

4

that there was no evidence to support the jury's finding to the contrary. [Appellant's Brief at p. 2] Richard correctly acknowledges that, as the proponent of the will, he had the burden of proof to prove that Nobie had testamentary capacity. [Appellant's Brief at p. 6 ("Richard Parker, being the proponent of the will, has the burden of proof.")] *See Seigler v. Seigler*, 391 S.W.2d 403, 404 (Tex. 1965) ("The burden of proof was on the proponent . . . to prove that the testator had testamentary capacity."); *Alldridge v. Spell*, 774 S.W.2d 707, 709 (Tex. App.—Texarkana 1989, no writ) ("The proponent of a will has the burden of establishing the testamentary capacity of the testator.").[3] And, as Richard correctly acknowledges, to have testamentary capacity, among other things, someone must have the ability to (1) understand the business in which the testator is engaged (i.e., that she is making a will); (2) understand the effect of making the will; (3) understand the general nature and extent of her property; and (4) have sufficient memory to (4-a) assimilate the elements of the business to be transacted, (4-b) hold those elements long enough to perceive their obvious relation

---

[3] Richard phrases his appellate issue as being both "as a matter of law" and "no evidence." [Appellant's Brief at p. 2] However, Richard acknowledges that, in this appellate issue, he "is attacking the adverse finding to an issue upon which [he] had the burden of proof." [Appellant's Brief at p. 6] Consequently, this appellate issue should be reviewed under the "as matter of law" standard (which, as explained below, requires Richard to surmount two separate hurdles in order to prevail) rather than under the slightly-less-onerous "no evidence" standard. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989).

5

to each other, and (4-c) form a reasonable judgment as to them. [Appellant's Brief at p. 5, citing *Campbell v. Groves*, 774 S.W.2d 717, 718 (Tex. App.—Dallas 1989, writ denied)]. If any one of those elements is lacking, there would be no testamentary capacity.

Richard correctly acknowledges that, because he is appealing an adverse finding on an issue where he had the burden of proof, "the reviewing court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary." [Appellant's Brief at p. 7, citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989)] In *Sterner*, the Texas Supreme Court refers to this as the first of "two hurdles" that Richard, as the party appealing an adverse finding on an issue where he had the burden of proof, "must surmount." *Sterner*, 767 S.W.2d at 690. If there is "some evidence" to support the jury's finding, the appellate court's inquiry ends there, and the appellate point must be overruled. *See Sterner*, 767 S.W.2d at 690.

There is most definitely "some evidence" to support the jury's finding that Nobie lacked testamentary capacity at the time she signed the will. Specifically, the evidence at trial included the following testimony from Dr. Ted Trimble, a board certified family practice medical doctor who had served as Nobie's personal

physician from 2003 or 2004 until the time of her death in 2011.  [CR 5; RR vol. 2 pp. 50, 53, 56, 61, 72]

- Dr. Trimble testified that Nobie suffered from "confusion" and "a foggy brain."  [RR vol. 2 p. 56]  Dr. Trimble attributed these conditions to Nobie having "brittle diabetes," not being good about controlling her blood sugar, and having blood sugar levels and blood pressure going from extremely high to extremely low and back (like "a roller coaster").  [RR vol. 2 pp. 54, 56, 58, 76]

- Dr. Trimble testified that Nobie suffered from "dementia."  [RR vol. 2 pp. 57, 77]  Dr. Trimble attributed this condition to Nobie having had multiple strokes (which would have caused "tiny blood clots flipping from the heart to the brain"), her having extreme blood sugar fluctuations, and her having a compromised vascular supply (having had multiple heart attacks, heart failure, and coronary artery disease).  [RR vol. 2 pp. 54, 56-57, 59-60, 77]

- Dr. Trimble testified that Nobie's "neurologic" system was not "stable." [RR vol. 2 p. 58]

- Dr. Trimble testified that, in February of 2006 (when Nobie signed the will at issue), Nobie did not have "sufficient mental ability to understand

7

that she was making a will" or "the general nature and extent of her property." [CR 5; RR vol. 2 p. 71] This testimony directly negates the testamentary capacity elements labeled "1" and "3" above.

- Dr. Trimble testified that, in the time frame when Nobie signed the will at issue in this case, Nobie "did not know what she was doing." [RR vol. 2 pp. 83-84] This testimony directly negates the testamentary capacity element labeled "2" above.

- Dr. Trimble testified that Nobie would not "have had sufficient memory to collect in her mind the elements of the business to be transacted and to be able to hold the elements long enough to perceive their obvious relation to each other and to form a reasonable judgment as to those elements." [RR vol. 2 p. 61] This testimony directly negates the testamentary capacity elements labeled "4-a," "4-b," and "4-c" above.

Additionally, Nobie's daughter JoAnn testified:

- JoAnn testified that Nobie was convinced that her daughter JoAnn was the star of a regularly-appearing TV show. [RR vol. 2 p. 122] But, in actuality, JoAnn had never been on TV. [RR vol. 2 p. 122]

The testimony above (from Dr. Trimble and JoAnn) constitutes "some evidence" to support the jury's finding that Nobie lacked testamentary capacity at the

8

time she signed the will. There would be "some evidence" to support the jury's finding that Nobie lacked testamentary capacity if there were "some evidence" negating even **one** of the required elements of testamentary capacity. And, although not required, there is actually "some evidence" negating **all** of the elements listed above. As such, Richard's first issue on appeal should be overruled.

Even if the testimony above (from Dr. Trimble and JoAnn) somehow did not constitute "some evidence" to support the jury's finding that Nobie lacked testamentary capacity at the time she signed the will, Richard's issue should nevertheless be overruled. Specifically, as Richard correctly acknowledges, in appealing an adverse finding on an issue where he had the burden of proof, he "must demonstrate on appeal that the evidence establishes, as a matter of law, **all** vital facts in support of the issue." [Appellant's Brief at p. 6 (emphasis supplied), citing *Sterner*, 767 S.W.2d at 690] In *Sterner*, the Texas Supreme Court refers to this as the second of "two hurdles" that a party "must surmount" when appealing an adverse finding on an issue where he had the burden of proof. *Sterner*, 767 S.W.2d at 690. This second hurdle is surmounted "only if" the appellant has "conclusively established" the contrary of the jury's finding. [Appellant's Brief at p. 7, citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983)]

9

Richard cites to no evidence in his Appellant's brief—and there is none in the record—which would satisfy his burden to "conclusively establish[]" the following elements of testamentary capacity: (4-a) that Nobie had sufficient memory to assimilate the elements of the business to be transacted, (4-b) that Nobie had sufficient memory to hold those elements long enough to perceive their obvious relation to each other, and (4-c) that Nobie had sufficient memory to form a reasonable judgment as to them. Richard appears to argue in his Appellant's brief—without explanation—that these elements "of the legal definition of testamentary capacity [were] met by a reasonable inference from the evidence." [Appellant's Brief at p. 11] So, while Richard acknowledges that he has the burden to establish, "as a matter of law," all elements of testamentary capacity, he relies exclusively on some unexplained "inference" to establish that Nobie had sufficient memory to (4-a) assimilate the elements of the business to be transacted, (4-b) hold those elements long enough to perceive their obvious relation to each other, and (4-c) form a reasonable judgment as to them. As such, Richard's first issue on appeal should be overruled.

The jury's finding that Nobie lacked testamentary capacity would be sufficient to support the trial court's judgment denying probate to the will at issue—even without the jury's finding of undue influence. *See Bracewell v. Bracewell*, 20 S.W.3d

10

14, 19 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ("to form a valid will, in Texas, the testatrix must have had 'testamentary capacity' when the will was executed"). Consequently, if this Court overrules Richard's first issue on appeal, it would be appropriate affirm to the trial court's judgment without ever reaching Richard's second issue on appeal.

## II. In response to Richard's second issue on appeal, there was ample evidence to support the jury's finding that Nobie signed the will under undue influence.

In Richard's second issue on appeal, he claims that the evidence was legally insufficient to support the jury's finding that Nobie signed the will under undue influence. [Appellant's Brief at p. 2] Richard states that, in reviewing such a challenge, an appellate court "considers only the evidence and inferences which tend to support the jury finding and disregards all evidence and inferences that would lead to contrary findings." [Appellant's Brief at p. 13, citing *In re Estate of Woods*, 542 S.W.2d 845, 847 (Tex. 1976)]

The "evidence must be considered in a light most favorable to the party in whose favor the verdict has been rendered, and every reasonable inference deducible from the evidence is to be indulged in that party's favor. Anything more than a scintilla of evidence is legally sufficient to support the finding." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998)

11

(internal citation omitted). "Any evidence of probative force supporting a finding requires us to uphold the jury's verdict." *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997).

"Factors to be considered on the issue of undue influence include infirmity of mind produced by age, ill health . . . and an unnatural or unjust disposition by the instrument [the will]." *In re Estate of Riley*, 824 S.W.2d 305, 306 (Tex. App.—Corpus Christi 1992, writ denied). Dr. Trimble's testimony detailed above constitutes evidence of infirmity of mind produced by age and ill health. As for an unnatural or unjust disposition by the will, Nobie's will leaving everything to Richard—completely excluding daughter JoAnn and granddaughter Deborah—constitutes evidence of an unnatural or unjust disposition. [RR vol. 6 Exhibit P-1]

Additionally, as to whether Nobie was unduly influenced (by Richard) to sign the will, her daughter JoAnn testified as follows:

- JoAnn testified that Richard was "bossy" toward Nobie. [RR vol. 2 p. 122]

- JoAnn testified that when her father (Nobie's husband) Posey was on life support, Richard told Posey's doctor that Richard "was in charge" and indicated that, when it came time to decide whether to take Posey off of life support, that decision was solely Richard's—not Nobie's.

12

[RR vol. 2 pp. 103, 123; RR vol. 6 Exhibits O-3, O-4]  This upset Nobie, and Nobie had to have her lawyer (Mike Lantrip) contact Posey's doctor and advise that, despite what Richard claimed, Richard did not have the right to make such decisions.  [RR vol. 2 p. 123]  Nobie's lawyer even had to threaten to sue Richard over this.  [RR vol. 2 p. 123]

- JoAnn testified that Richard told Nobie: "My dad used to tell you what to do, and I'm going to tell you what to do now."  [RR vol. 2 p. 124]

- JoAnn testified that after her father (Posey, who was Nobie's husband) died, Richard took her father's possessions and began tossing them into a fire.  [RR vol. 2 pp. 103, 125; RR vol. 6 Exhibits O-3, O-4]  Nobie begged Richard to stop doing this, but he repeatedly responded "I'm in charge."  [RR vol. 2 p. 125]  This made Nobie very upset.  [RR vol. 2 p. 125]

Although JoAnn's testimony may constitute circumstantial evidence (rather than direct evidence) of undue influence, it is entirely proper to establish undue influence with circumstantial evidence.  *See Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex. 1963).  This would, in fact, be the most common means of establishing undue influence, as "exertion of influence that was or became undue is usually a

13

subtle thing and by its very nature usually involves an extended course of dealings and circumstances." *Rothermel*, 369 S.W.2d at 922.

It is important to remember that "jurors are in the best position to sift through the . . . evidence presented concerning this subtle concept. The jury is vitally important in the determination of whether undue influence was exerted." *Cobb v. Justice*, 954 S.W.2d 162, 166 (Tex. App.—Waco 1997, pet. denied). As such, Richard's second issue on appeal should be overruled.

## **PRAYER**

Appellee JoAnn Parker Neal respectfully prays that this Court affirm the trial court's judgment. JoAnn also prays for her costs and for all other relief to which she may be entitled.

Respectfully submitted,

/s/ Chad M. Ruback
Chad M. Ruback
State Bar No. 90001244
chad@appeal.pro
The Ruback Law Firm
8117 Preston Road
Suite 300
Dallas, Texas 75225
(214) 522-4243
(214) 522-2191 fax

14

## CERTIFICATE OF COMPLIANCE

I certify that, according to my word processor's word-count function, in the sections of this brief covered by TRAP 9.4(i)(1), there are 2,984 words.

/s/ Chad M. Ruback
Chad M. Ruback

## CERTIFICATE OF SERVICE

On May 7, 2015, I served a copy of this document to the following counsel for Appellant Richard Parker:

Tom S. McCorkle
403 W. Tyler Street
Gilmer, Texas 75644

/s/ Chad M. Ruback
Chad M. Ruback